**ARMSTRONG et al. v. SNAPP et al.**

No. 14675.

Court of Civil Appeals of Texas.

Fort Worth.

March 16, 1945.

Donald & Donald and Joe H. Cleveland, all of Bowie, for appellants.

C. J. Brannan, of Wichita Falls, for appellee Citizens National Bank of St. Jo.

T. H. Yarbrough, of Bowie, for appellee J. L. Snapp.

McDONALD, Chief Justice.

This suit was brought by Mrs. Nora Armstrong, for herself and as next friend for her minor children, and by her children who were not minors. The object of the suit was to recover certain land. The defendants filed what they termed a plea in abatement, but which was in reality a plea in the nature of a special exception, and otherwise answered as will be noted later in this opinion. The trial court, after considering the pleadings, and without hearing any evidence, rendered judgment that plaintiffs take nothing by their suit. We have for consideration therefore only the sufficiency of plaintiffs' pleadings as against the attack made upon them in defendants' pleadings. The plaintiffs' allegations will be taken as true for the purposes of this appeal.

The following is a summary, so far as is material here, of plaintiffs' allegations:

W. P. Armstrong and wife, parents of P. L. Armstrong, owned certain property. P. L. Armstrong inherited from them an eighth interest in the property. P. L. Armstrong married the plaintiff Nora Armstrong. The seven children of P. L. and Nora Armstrong are named as plaintiffs in this suit. After the deaths of his parents, P. L. Armstrong purchased, with his separate funds, the interests of his brothers and sisters in the land here involved, which they had inherited from W. P. Armstrong and wife. The land in question here thus became the separate property of P. L. Armstrong, although conveyance was made to him after he and Nora Armstrong were married. From the time of his acquisition of the land until his death, P. L. Armstrong and his family lived on the land and occupied it as their homestead, and after his death Nora Armstrong, the widow, and her minor children continued to occupy the land as their homestead. After the land was acquired and paid for by P. L. Armstrong, he became indebted to the Citizens National Bank, of St. Jo, Texas, one of the defendants herein, in the amount of several hundred dollars. Demand was made for payment thereof, and the bank, through its officers, suggested "fixing the title," to quote from plaintiffs' pleadings, to the land so that a loan could be procured, and suggested a simulated sale of the land to Lee Husband, a brother of Mrs. Nora Armstrong. Pursuant thereto the Armstrongs executed a deed on December 23, 1932, which purported to convey the land to Lee Husband for a recited consideration of $1500 in cash and three vendor's lien notes aggregating the sum of $1000, payable to Armstrong at said bank. The $1500 in cash actually was not paid, the Armstrongs remained in possession of said land, using and occupying it as their homestead, and the transaction was simulated in order to attempt to place a lien on the homestead contrary to law. The bank took charge of said notes, and undertook to negotiate a loan against the land, but was unable to do so. Because of the failure to obtain a loan, the officers and agents of the bank caused Lee Husband to reconvey the land to P. L. Armstrong by deed dated August 23, 1934. The deed recited a cash consideration of $1500 and the execution of five vendor's lien notes for $200 each payable to Husband or his order. This was a simulated transaction. The recited cash consideration was not paid. Husband endorsed the notes, but received no benefit or thing of value therefor, and merely acted as an accommodation party for the bank. Again a loan was sought and none obtained. Finally the notes payable to Husband were sold to a Mrs. Jones, but the bank had to pay the amount of them to Mrs.

**382**

Jones, and reacquired them from her. Both series of notes, towit, those from Husband to Armstrong and those from Armstrong to Husband, were void and unenforceable, because they were not executed for value, nor as a part of the purchase price for said land, nor for taxes or improvements.

After the death of P. L. Armstrong, the defendant J. L. Snapp came to the home of plaintiff and her children, and stated to her that he had been informed that the bank was going to foreclose the lien against the land; that he had been in touch with the bank and that he would pay a little more than the debt and that in this way the funeral expenses of Mr. Armstrong could be paid. Snapp and the bank entered into a conspiracy to get the bank's debt paid and to obtain the land from plaintiffs. Snapp was acting with the bank in an attempt to collect the notes which they knew were not secured by a valid lien, in that the land was the separate property of P. L. Armstrong, and was the homestead of Mrs. Armstrong and her children. Mrs. Armstrong was overreached and misled into acting as Snapp and the bank desired. Mrs. Armstrong was inexperienced, and did not know that the notes were not secured by a valid lien on the land, and accordingly was caused to believe that the land was in danger of being subjected to payment of said notes. Defendants induced her to consent to qualify as guardian of the minor children. She executed some papers which she understood were guardianship proceedings, but which were in fact proceedings for a community survivorship. The land being the separate property of P. L. Armstrong, her act in making deed as community survivor was of no force and effect and conveyed no right that could take precedence over the interests of the children.

The bank at all times knew that the sale from Armstrong to Husband, and Husband's sale back to Armstrong, and the notes executed in connection therewith were simulated transactions. The bank had full knowledge thereof, and received the notes with such knowledge.

The bank was named as grantee in the deed from Mrs. Armstrong as community survivor, dated October 17, 1938. As a part of the same transaction, the bank made a deed to the defendant Snapp, and as a part of the consideration took notes amounting to $1700. Neither the bank nor Snapp are innocent purchasers, but are holders and owners with notice. The suit is to "cancel all deeds and notes, and for recovery of said land."

Defendants Snapp and wife "are therefore and thereby" charged with full notice of plaintiffs' rights, and Snapp was fully conversant with the fraudulent and simulated transactions between the Armstrongs and the bank.

The land was the separate property of P. L. Armstrong and such fact was well known by defendants, "or could have been ascertained by the use of reasonable inquiry." Since the land was occupied by Mrs. Armstrong and her children as a homestead all parties were put on notice of plaintiffs' rights.

Certain other allegations will be noticed later.

The prayer is for cancellation of the deed from Armstrong to Husband, the deed from Husband to Armstrong, the community survivor deed from Mrs. Armstrong to the bank, the deed from the bank to Snapp and wife and the notes set out in such deed, and "any oil and gas lease now claimed against said property or any part thereof," and for title and possession of the land.

In the opening paragraph of the answer of defendant bank, which is adopted by Snapp as his answer, the bank prays "that this suit be abated," to quote from the answer, for the reason that the plaintiffs' petition shows on its face that the land was community property of Armstrong and wife, and that by virtue of the deed from Armstrong and wife to Husband, and the deed executed by Mrs. Armstrong as community survivor, plaintiffs are not entitled to maintain the suit, and to vacate and hold for naught the judgment of the County Court of Montague County appointing and qualifying Mrs. Armstrong as community administrator, and that the plaintiffs are estopped to deny the validity of said deeds.

Immediately following such plea is a prayer that the suit be abated and dismissed.

The paragraph next following in the answer specially excepts to the plaintiffs' petition because the plaintiffs did not tender into court the $1800 paid by the bank to Mrs. Armstrong when she executed the community survivor deed, the answer reciting that $555 was paid in cash and that $1245 represented the amount of vendor's lien notes canceled. Plaintiffs' petition does not allege the payment of such $555 in cash.

The next two paragraphs contain special exceptions not necessary to describe here.

The next paragraph contains a general denial.

The paragraph next following the general denial reads as follows:

"This defendant further says that the plaintiffs' cause of action, if any, is barred by the four year statute of limitation [Vernon's Ann.Civ.St.Art. 5520], which is here invoked by this defendant."

The judgment of the court recites that there came on to be heard the defendants' pleas in abatement and the plea of the four year statute of limitation. The judgment then recites that the pleas in abatement and the plea of limitation are sustained, and decrees that plaintiffs take nothing by their suit.

■ The so-called plea in abatement is obviously not a plea in abatement, but rather is in the nature of a special exception attacking the sufficiency of plaintiffs' petition. We shall consider the substance of the plea, and treat it as an exception.

■■ In the arguments presented here by the defendants, who are appellees in this court, it is contended that the record title to this land, as shown by the deeds in question, presumptively shows the land to be community property, and that plaintiffs are estopped to show otherwise. The flaw in appellees' contention is that such presumption is overcome by the facts alleged in plaintiffs' petition. According to those allegations, which we must accept as true in passing upon exceptions, Armstrong bought and paid for the land with his separate funds; the transactions with Husband were simulated; Armstrong remained the owner of the land until his death; the purported vendor's lien notes were invalid as against the claim of homestead; and the defendants had knowledge of these facts. Most of the rules of law applicable to the case before us are stated in the opinion in Smith v. Buss, 135 Tex. 566, 144 S.W.2d 529.

Under authority of that decision, we hold as follows in the case before us.

Under the facts alleged, the land was the separate property of P. L. Armstrong, and so remained until the time of his death. The transactions with Husband, participated in by the bank, were at most a futile effort to place a lien upon a homestead for a purpose not permitted by law.

■ Mrs. Nora Armstrong as community survivor had no authority to convey the separate property of her deceased husband. Mrs. Armstrong's appointment and qualification as community survivor present no obstacle to a suit by Mr. Armstrong's heirs to recover what was his separate property. The county court, in the probate proceeding, had no jurisdiction to change the ownership of such land from separate to community by simply approving an inventory and appraisement to that effect.

In view of the nature of the judgment of the trial court, we do not have before us the question of estoppel as to Mrs. Nora Armstrong alone. We shall not undertake to say here whether her allegations of fraud were sufficient to relieve her of a charge of estoppel by deed or otherwise. Neither defendants' pleadings nor the judgment of the trial court makes any effort to differentiate the positions of Mrs. Armstrong and the other plaintiffs.

■ Defendants cannot claim as innocent purchasers because, according to the allegations of the petition, they had notice both of the separate character of the property, and of the simulated nature of the transactions with Husband.

■ We overrule defendants' contention that the plaintiffs' petition was subject to special exception because of the failure to offer to do equity. The petition alleged that Snapp collected more than enough from sales of products from the land, and from sales of oil leases, to compensate him for the price he paid the bank for the land. There is nothing in the petition to show that the bank suffered any loss. Furthermore, we do not see that the plaintiffs who were claiming the separate property of their deceased father were obligated to tender anything to the purchaser from the community survivor.

■ When we examine the plea of limitations, it is seen that it is not in the nature of a special exception, but is in the nature of an affirmative plea. Judgment could not be rendered on this character of limitation plea until after a trial on the merits, as distinguished from a hearing on exceptions. Limitation may be pleaded by way of special exception where the facts showing limitation appear on the face of the plaintiffs' petition. But here the plea is not in the form of a special exception, and it follows the plea of general denial. Action on the plea of limitation was premature.

■ Plaintiffs' petition was sufficient to state a cause of action as against the special exceptions contained in the pleadings of the defendant. We make no effort to decide other questions which might suggest themselves from a reading of the pleadings of the parties.

The judgment of the trial court is reversed, and the cause is remanded for another trial.